UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ARMSTRONG,

                Plaintiff,                Case Number 13-14218
v.                                                        Honorable David M. Lawson
                                                         Magistrate Judge Mona K. Majzoub

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____/

## OPINION AND ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING DECISION OF THE COMMISSIONER, DISMISSING COMPLAINT, AND REFERRING ATTORNEY RICHARD J. DOUD TO THE CHIEF JUDGE FOR POSSIBLE DISCIPLINE

     Plaintiff John Armstrong filed the present action through counsel, Richard J. Doud, challenging the decision of the Commissioner of Social Security to terminate his disability benefits. The case was referred to Magistrate Judge Mona K. Majzoub under 28 U.S.C. § 636(b) and E.D. Mich. LR 72.1(b)(3). Thereafter, the parties filed cross motions for summary judgment. On October 19, 2014, Judge Majzoub filed a report recommending that the Court deny the plaintiff's motion for summary judgment, grant the defendant's motion for summary judgment, and affirm the decision of the Commissioner. Judge Majzoub also criticized plaintiff's counsel for filing a generic brief that failed to address the specific issues in the case. She noted that the Mr. Doud had engaged in that practice in dozens of other Social Security appeals filed in this district, and that he had been warned about that conduct in other cases. Therefore, Judge Majzoub recommended that the Court impose monetary sanctions against Mr. Doud in the amount of $5,000 under its inherent authority.

     Although the report stated that the parties to this action could object to and seek review of the recommendation within fourteen days of service of the report, remarkably, Mr. Doud filed no

objections to the merits decision or the recommendation that he be sanctioned. The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to review the matter independently. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Therefore, the Court will deny the plaintiff's motion for summary judgment, grant the defendant's motion for summary judgment, affirm the decisions of the Commissioner, and dismiss the complaint.

Also, the Court agrees with the findings and conclusions of the magistrate judge as to the merits of the complaint. However, for reasons explained below, the Court believes that it does not have the inherent authority to impose sanctions against a lawyer for shoddy or unprofessional practice in the circumstances of this case. There are rules and statutes that address such conduct, and the authority to sanction counsel is conditioned on satisfaction of the elements of the various remedial and punitive provisions, which the magistrate did not discuss. Nonetheless, that does not mean that the Court should turn a blind eye to Mr. Doud's conduct in this case, which apparently replicates his activity in many other cases in this district. When an attorney engages in misconduct, a judicial officer may refer that lawyer to the Chief Judge of the district for the institution of disciplinary proceedings under the local rules. E.D. Mich. LR 83.22(c)(3). By this order, the Court makes that referral.

As the magistrate judge noted, the plaintiff's brief in this case was a cut-and-paste recitation of boilerplate references to controlling Social Security cases. The magistrate judge was careful to note that there is nothing wrong with using old work product as such. There is no need to replicate research or recraft legal passages when they apply to a similar, identical, or recurring factual

-2-

presentation. However, in this case, Mr. Doud's template brief hardly fits that bill. He argued that his client should have been awarded disability benefits, but the case concerned the termination of benefits previously awarded. The plaintiff received benefits under Title II of the Social Security Act in 2003 for a closed period between June 2001 and June 2003. Due to an administrative error, he continued to receive benefits until he was determined no longer to be disabled on March 1, 2010 after an administrative review. Mr. Doud mentions these facts only in passing. And although his brief recites general legal propositions concerning the standard of review and the obligations of an administrative law judge, it does not mention any case or regulation that applies to the decision to terminate benefits already awarded.

Were this an isolated incident, not much more would have been said about it. But as the magistrate judge noted, this was not the first instance of Mr. Doud employing a "superficial, cut-and-paste, template approach to fulfilling his professional duty to substantively brief the issues presented for this Court's most serious consideration and determination." R&R at 13. She stated that the brief Mr. Doud filed in this case "is almost identical to the brief he filed in *Fielder* [*v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865,] and dozens, if not hundreds, of other briefs that he has filed with this Court." *Id.* at 13-14. And she recounted how other judges in this district had red-flagged Mr. Doud's conduct. *Id.* at 13 (quoting *Fielder*, 2014 WL 1207865, at *1 n.1 (observing that "nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel")). In fact, the *Fielder* court set out a lusty example of the judicial criticisms leveled at Mr. Doud's template-briefing practice. *See Fielder*, 2014 WL 1207865, at *1 n.1. Because Mr. Doud had been warned previously that he must change his ways,

Judge Majzoub recommended that the Court invoke its inherent powers to fine Mr. Doud $5,000 in an effort to curb his conduct.

Federal courts possess "[c]ertain implied powers" to operate the institution of the judiciary "because they are necessary to the exercise of all others." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812). Those powers arise from necessity, "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). But those powers are limited, and "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

It has been suggested that when it comes to sanctioning attorneys, a court may not invoke its inherent powers when there are rules and statutes already in place to address the offending conduct, at least in civil cases. *See United States v. Aleo*, 681 F.3d 290, 307 (6th Cir. 2012) (Sutton, J., concurring) (expressing the view that "[a] court's use of inherent power to sanction the filing of [an] (allegedly) frivolous motion could not be reconciled with the sanctioning regime already in place under the Federal Rules of Civil Procedure"). That view seems to collide, however, with the Supreme Court's pronouncement in *Chambers* that there is "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described" in that case. *Chambers*, 501 U.S. at 46. In *Chambers*, a defendant and his attorneys deployed a variety of tactics to avoid complying with a specific performance order issued by the district court, including efforts to remove the subject property beyond the court's jurisdiction.

The former view has its virtues. There are several statutes and rules in place that permit the imposition of sanctions for certain well-defined violations. *See* Fed. R. Civ. P 11(c), 16(f), 26(g)(3),

-4-

37, 56(h); 18 U.S.C. § 401; 28 U.S.C. § 1927; *see also* 8 U.S.C. § 1229a(b)(6) (immigration proceedings); 37 C.F.R. § 2.120(g) (trademark proceedings); Fed. R. App. P. 38 (appellate proceedings); Fed. R. Bankr. P. 9011 (bankruptcy proceedings). It would undermine that regulatory scheme "to invoke that power to ease the burden of satisfying existing Civil Rules — to punish practices exempted by a Rule or that fall short of meeting a Rule's standard for sanctionable conduct." *Aleo*, 681 F.3d at 307 (Sutton, J., concurring). On the other hand, those rules and statutes do not cover the gamut of potentially offensive conduct. Those "mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." *Chambers*, 501 U.S. at 46. As the Court explained, many of the rules apply only in well-defined situations, whereas "the inherent power extends to a full range of litigation abuses." *Ibid.* And although the inherent power may be exercised to redress bad faith conduct, the rules reach misconduct that might be merely unreasonable. *Id.* at 46-47.

Judge Sutton's legitimate concern that the overuse of the inherent power may trench upon Congress's authority over lower federal courts, *Aleo*, 681 F.3d at 306-07 (noting that Article III of the Constitution's authorization of Congress to create "inferior" federal courts includes the authority to "'limit [ ]' their 'inherent power . . . by statute and rule'") (quoting *Chambers*, 501 U.S. at 47), can be assuaged, however, by recognizing that the conduct that triggers the court's inherent power to remediate or punish must include an element of bad faith. *See Chambers*, 501 U.S. at 46-47 (explaining that "the inherent power must continue to exist to fill in the interstices," but acknowledging that certain "narrow exceptions" to fee-shifting rules "effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in *bad-faith conduct or willful disobedience*" (emphasis added)).

That limitation is consistent with Sixth Circuit precedent. *See, e.g., Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). To use inherent power as the authority for imposing monetary or other sanctions against an attorney for his or her filings, a court must find that these three elements are present: "[1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Ibid.* (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)).

The magistrate judge in this case believed that Mr. Doud acted in bad faith because his template filings demonstrated "a wanton abuse of the judicial process," which result[ed] in the gross misrepresentation of his client." R&R at 14. The Court must disagree. Certainly, Mr. Doud's template briefs failed to present meritorious claims or advance the (presumably) legitimate claims of his clients. But "the mere fact that an action is without merit does not amount to bad faith." *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010). The *Metz* court stated that "something more" is required to satisfy the third part of its test, that is, to show that a filing was motivated by an improper purpose. As examples, the court suggested that a finding that the filing was made "for purposes of harassment or delay, or for other improper reasons," or that "the plaintiff filed a meritless lawsuit and [withheld] material evidence in support of a claim," or that the "party was delaying or disrupting the litigation or hampering enforcement of a court order." *Metz*, 655 F.3d at 489 (internal quotation marks and citations omitted).

In this case, the record does not establish that the claims raised in the complaint and the arguments advanced in the motion for summary judgment — albeit in an entirely undeveloped and unhelpful form — are wholly without merit. Nor does the record show that the plaintiff's motion

-6-

for summary judgment was filed for an improper purpose such as harassment or delay. *See Aleo*, 681 F.3d at 305 (stating that "[e]ven if [the defendant's] motion was meritless, and even if [his lawyer] should have known this, the court has not given any evidence to support its position that [the lawyer] filed the motion to harass the victim's mother. . . . The court 'must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings.'"). Moreover, the record also does not support a finding that, by filing his brief in support of the plaintiff's motion for summary judgment plaintiff's counsel has "so multiplie[d] the proceedings in [the] case unreasonably and vexatiously" as to justify an order requiring him to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927.

Perhaps one might conclude that, by signing and presenting to the Court his brief in support of the plaintiff's motion for summary judgment, plaintiff's counsel violated Federal Rule of Civil Procedure 11(b), which provides that "[b]y presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). However, the procedural prerequisites for sanctions under Rule 11 — a safe harbor motion or a show cause order, Fed. R. Civ. P. 11(c)(2), (3) — have not occurred.

Because the conduct in this case appears to be a pattern of activity that has emerged in several of Mr. Doud's cases in this district, the Court believes that the better course is to refer the

matter to the Chief Judge to determine whether disciplinary or remedial measures should be taken. *See* E.D. Mich. LR 83.22(c)(3) ("When misconduct or allegations of misconduct that, if substantiated, would warrant discipline of an attorney who is a member of the bar of this court . . . [has] come to the attention of a judicial officer . . . the judicial officer may refer the matter to . . . the chief district judge for institution of disciplinary proceedings by this court under LR 83.22(e).").

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #13] is **ADOPTED** in part.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. #10] is **DENIED**, the defendant's motion for summary judgment [dkt. #12] is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

It is further **ORDERED** that the complaint is **DISMISSED**.

It is further **ORDERED** that the recommendation to impose monetary sanctions against the attorney for the plaintiff is **REJECTED**.

The Court refers this case to Chief Judge Gerald E. Rosen under E.D. Mich. LR 83.22(c)(3) as an example of a pattern of unprofessional conduct, for action that may be appropriate under LR 83.22(e).

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:  March 30, 2015

-8-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2015.

                                        s/Susan Pinkowski
                                        SUSAN PINKOWSKI